**In re GENERAL DATACOMM INDUSTRIES, INC., et al., Debtors.**

**General Datacomm Industries, Inc., et al., Appellants,**

**v.**

**James R. Arcara, Frederick R. Cronin, Robert S. Smith, and Thomas L. Thompson, Appellees.**

Bankruptcy No. 01–11101–PJW.
Civil Action No. 02–1373–KAJ.

United States District Court,
D. Delaware.

Feb. 24, 2004.

Joseph Anthony Malfitano, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Debtor/Appellant.

Ricardo Palacio, Ashby & Geddes, Wilmington, DE; Eric G. Waxman, III, Daniel M. Kolko of Phillips Nizer, LLP, Garden City, NY, for Appellees.

David Buchbinder, Wilmington, DE, trustee.

### MEMORANDUM ORDER

JORDAN, District Judge.

## I. Introduction

Presently before the court is an appeal by General Datacomm Industries Inc. and its affiliates (the "Appellants") from the July 9, 2002 Order by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") denying Appellants' motion to reject the executory contracts of James R. Arcara, Frederick R. Cronin, Robert S. Smith and Thomas L. Thompson (collectively the "Appellees") [1] pursuant to Section 365 of the Bankruptcy Code. (D.I.1.) Also before the court is the Appellants' motion to strike portions of the

---

1. The Appellees were senior executives of the Appellants, serving in various capacities as officers, directors, and/or managers of Appel- lants day-to-day business operations. (D.I. 8 at 4.)

Appellees' answering brief. (D.I. 10.) The court has jurisdiction over this case pursuant to 28 U.S.C. § 158(a). For the reasons that follow, the decision of the Bankruptcy Court that is the subject of this appeal (D.I. 1) is affirmed, and the Appellants' motion to strike (D.I. 10) is denied.

## II. Background

On November 2, 2001, the Appellants filed for relief under Chapter 11 of the Bankruptcy Code, and pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Appellants continued to possess their properties and manage their businesses as debtors in possession. (D.I. 8 at 3.) On November 19, 2001 the Appellants advised the Appellees that they would be terminated on November 30, 2001, and that the employee benefit agreements they entered into with the Appellants (the "Agreements")[2] would be terminated on the same date. (D.I. 9 at 5.) Under the

Benefit Agreements, the Appellants were required to pay the annual premiums of up to $7,000 for long term care insurance coverage for the lifetime of each Appellee and his spouse ("Long Term Care Benefits").[3] (*Id.* at 4.) The Agreements also provided that, upon retirement, each Appellee and his spouse would receive, at the Appellants' sole cost, a lifetime continuation of the health insurance benefits that the Appellee was then receiving ("Retirement Health Benefits").[4] (*Id.*) On November 29, 2001, the Appellants filed their Motion with the Bankruptcy Court to reject the Agreements pursuant to Section 365 of the Bankruptcy Code[5] (the "365 Motion"), and on November 30, 2001, the Appellees were terminated. (*Id.* at 5; D.I. 8 at 4.)

The Appellees objected to the 365 Motion, claiming that the Agreements qualified for treatment under Section 1114 of the Bankruptcy Code[6] ("Section 1114")

---

**2.** While I use the term Agreements throughout this Order, it is unclear whether each Appellee entered into a separate Agreement with the Appellants, or whether there was just one Agreement that established benefits for each Appellee. The Appellants use the term "Agreements" (D.I. 8 at 2) and the Appellees use the word "Plan" (D.I. 9 at 2). (*See also* D.I. 3 at Ex. 2.)

**3.** *"Long Term Care:* Effective upon approval by the Board of Directors of this Plan, the [Appellants] shall pay the annual premiums of up to an annual maximum amount of $7,000 (the 'cap'), for Long Term Care insurance coverage in the amount specified in Schedule A to the Plan, for each Appellee and his or her spouse for the remainder of their respective lives." (D.I. 3 at Ex. 2.)

**4.** *"Retirement Health Benefits:* Upon an [Appellees'] retirement, the [Appellee] and his or her spouse shall thereafter receive for the remainder of the lives of the [Appellee] and his or her spouse, a continuation of the health insurance benefits the [Appellant] was then furnishing the [Appellee], at the [Appellants] sole cost." (D.I. 3 at Ex. 2.)

**5.** Section 365 allows a debtor in possession, subject to the court's approval, to reject any executory contract of the debtor in order to relieve the estate of onerous and burdensome future obligations. *See* 11 U.S.C. § 365(a); *In re Spectrum Info. Techs., Inc.,* 190 B.R. 741, 745 (Bankr.E.D.N.Y.1996).

**6.** 11 U.S.C. § 1114(e) provides:

Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any *retiree benefits* ...
(emphasis added).
11 U.S.C. § 1114(f)(1) provides:
Subsequent to filing a petition and prior to filing an application seeking modification of the *retiree benefits,* the trustee shall—make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the

and that the Appellants were therefore required to comply with the procedural requirements of that statute before terminating or modifying the Agreements. (D.I. 9 at 6.) The Bankruptcy Court conducted a hearing on April 25, 2002 to determine whether Section 365 of the Bankruptcy Code ("Section 365") or whether Section 1114 governed the Agreements. (D.I. 3 at Ex. 4.) The Bankruptcy Court held that Section 1114 governed (*Id.*), and entered an Order denying Appellants' 365 Motion, stating that "[i]n the event the [Appellants] seek to terminate or otherwise modify any of the benefits of [the Appellees] provided for in the [Agreements] ... the [Appellants] shall be required to first comply with the mandates and procedural requirements of 11 U.S.C. § 1114." (D.I. 3 at Ex. 5.) The Appellants filed a Notice of Appeal to this court on July 17, 2002. (D.I. 1.)

### III. Standard of Review

 On appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). When reviewing mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercises 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its applica-

tion of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)).

### IV. Discussion

The Appellants argue that the Bankruptcy Court erroneously ordered them to comply with the mandates and procedural requirements of Section 1114 before modifying or terminating the Appellees' Agreements because Section 1114 applies only to "retired employees,"[7] and the Appellees were not retired as of the date the 365 Motion was filed. (D.I. 8 at 5–6.) The Appellants contend that it is undisputed that the Appellees were current employees of the Appellants and were being paid for their employment on the date the 365 Motion was filed, and under the "plain" meaning of the word retired, this means that they were not retired. (*Id.* at 6.) The Appellants argue that Section 1114 is therefore inapplicable to their 365 Motion, and that the Order by the Bankruptcy Court denying their 365 Motion should be reversed. (D.I. 13 at 4.)

In order to properly address the Appellants' claims, I must address the substance of the Bankruptcy Court's bench ruling at the April 25, 2002 hearing. At that hearing, the Bankruptcy Court explained that even though the Agreements "could be viewed as ... executory contract[s] cov-

---

reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably ...
(emphasis added).

7. Appellants point out that retiree benefits are defined in Section 1114(a) as:

payments to any entity or person for the purpose of providing or reimbursing payments for *retired employees* and their spous-

es and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or other program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title
(emphasis added).

ered by Section 365," Section 365 was inapplicable because the language "notwithstanding any other provision of this title" in Section 1114(e)(1) applies to and "overrides [Section] 365 with respect to retiree benefits." (D.I. 3, Ex. 4 at 36.) The Bankruptcy Court then analyzed the Long Term Care Benefits and Retirement Health Benefits provided in the Agreements. With respect to the Long Term Care Benefits, the Bankruptcy Court found that these "were being paid by [the Appellants] during the term of [the Appellees'] employment, [and were] not triggered by a retirement. So at least as to [the Long Term Care] benefits, it seems to me that the [Appellants] cannot avoid that obligation." (*Id.* at 37–38.)

After noting the absence of a definition of the term "retire" in the Agreements, the Bankruptcy Court then articulated several reasons for finding that the Appellees' were entitled to the Retirement Health Benefits even though they had been terminated. (D.I. 3, Ex. 4 at 38.) First, the Bankruptcy Court stated that since the Appellees had "a long [employment] history with the [Appellants,] and the agreement[s] identif[y] these people as having had a long history with the [Appellants], ... then I think it's fair that the company has forced their retirement...." (*Id.*) Second, the Bankruptcy Court gave weight to the fact that the Appellees were terminated without cause. "If [Appellees] were terminated for cause, then I think you might have an argument that the [retirement] benefits would not be triggered. But since ... it's agreed that they were terminated without cause, I conclude that they should be entitled to ... [the] retirement benefits as contemplated by the agreement[s]." (*Id.* at 39.) Finally, the Bankruptcy Court found that the Benefit Agreements were "binding upon the [Appellants] and its successors and assigns" and since "there was no reservation of

rights to amend or repeal th[ese] agreement[s,] ... it seems ... the intent was [that] on retirement [the Appellees] would be entitled to the benefits." After re-summarizing these findings, the Bankruptcy Court stated, "I conclude that [the Appellees] are eligible for these benefits. I conclude that the matter is not covered by Section 365 and it is covered by Section 1114." (*Id.*)

Because the Bankruptcy Court's holding includes mixed questions of law and fact, I will apply the clearly erroneous standard of review to the Bankruptcy Court's findings of fact and will review the Bankruptcy Court's findings of law *de novo*. As a matter of fact, the Bankruptcy Court found that retirement was not required in order for the Appellees to receive the Long Term Care Benefits because they qualified for these benefits when the Agreements were approved by the Appellants' Board of Directors. (D.I. 3, Ex. 4 at 37–38.) The Bankruptcy Court also found, as a matter of fact, that the Appellees were terminated without cause, that the Appellees gave many years of valuable service to the Appellants, that the Retirement Health Benefits were contractually binding on the Appellants and its successors in interest, and that the benefits contained in the Agreements were unable to be amended or repealed. (*Id.* at 38.) These findings by the Bankruptcy Court are supported by the record and are not clearly erroneous.

As a matter of law, the Bankruptcy Court found that, absent a definition of retirement in the Agreements, and because of their many years of service to the Appellants, the Appellees were, in effect, forced into retirement. The Bankruptcy Court held that this forced retirement, together with the Appellees' termination without cause and

the Appellants' intent that the Appellees receive the Retirement Health Benefits, entitled the Appellees to these benefits as a matter of contractual right. Because the term "retire" was not defined in the Agreements, and could be interpreted to mean "voluntary retirement" as the Appellants argue or discharge as the Appellees argue, I must determine whether the Agreements are ambiguous.

In determining whether a contract is ambiguous, the court assumes the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement. This does not mean, however, that the court is confined to the four corners of the written document. Rather, the court reads the contract in the context in which it was made. Therefore, to determine the parties' intentions, the court may consider, among other things, the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.

*Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir.1999) (quotations and citations omitted).

■ "[T]he 'prevention' doctrine' provides that a party may not escape contractual liability by reliance upon the failure of a condition precedent where the party wrongfully prevented performance of that condition precedent." *Mobile Communications Corp. of Am. v. MCI Communications Corp.*, 1985 WL 11574 at *4 (Del.Ch. Aug.27, 1985). *See also T.B. Cartmell Paint & Glass Co. v. Cartmell*, 186 A. 897, 903 (Del.Super.1936) (stating that "[i]t is a sound principle that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned"). Here, retirement was the condition precedent to the Appellees' receipt of certain benefits under the Agreements, and the Appellants prevented the Appellees from voluntarily retiring by discharging them without cause. Because the Appellees were not allowed to voluntarily retire, and because, by way of termination, they were forced into retirement, I hold that the Appellees are retirees within the meaning of Section 1114. Accordingly, as the Bankruptcy Court held, the Appellants must comply with the procedures of Section 1114. *See In re GF Corp.*, 115 B.R. 579, 583 (Bankr.N.D.Ohio 1990).[8]

Given the express language in the Agreements that the Retirement Health Benefits were binding on the Appellants and unable to be modified by successors in interest, and because the Agreements prescribed that competition, disparagement or legal action against the company were the only circumstances under which benefits could be terminated, I find that the Agreements are unambiguous. The intent of both the Appellants and the Appellees was that the Appellees would receive the Retirement Health Benefits unless they were terminated for cause. Since the Appellees were not terminated for cause, I affirm the Bankruptcy Court's holding that the Re-

---

**8.** The Bankruptcy Court ordered the Appellants to comply with the requirements of Section 1114 before terminating "any" of the benefits in the Agreements. (D.I. 3 at Ex. 5.) At the hearing, the Bankruptcy Court ruled that retirement was not needed to trigger Long Term Care Benefits. (D.I. 4, Ex. 4 at 37–38). If retirement is not required in order for the Appellees to receive the Long Term Care Benefits, it would appear that Section 1114 is inapplicable to these benefits. However, the Appellants have not argued that they should be allowed to sever these benefits from the Agreements and eliminate them without complying with Section 1114. Because the Appellants have not raised this issue, I do not need to address it.

tirement Health Benefits were contractually protected in a situation of forced retirement and that the Appellees are entitled to these benefits.

■ The Bankruptcy Court also held that the Appellants must comply with the mandates and procedural requirements of Section 1114 before the Appellants could modify the Agreements. (D.I. 3 at Ex. 5). As discussed, the Appellants emphasize that the Appellees were not retired on the date the 365 Motion was filed, and because Section 1114 only governs retired employees, the Appellants argue that the Bankruptcy Court erroneously applied Section 1114 to "current, non-retired employees." (D.I. 8 at 9.) However, the fact that the Appellees were not retired at the time of the 365 Motion is irrelevant in determining the application of Section 1114.

Section 1114(f)(1) requires the trustee (or debtor) to make a proposal to the retirees' authorized representative, which provides for modifications in the retiree benefits necessary to permit the debtor's reorganization, to negotiate with the authorized representative in good faith regarding the proposed modifications, and to provide the authorized representative with relevant information necessary to evaluate the proposal "subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits." Although the timing of when the employees must be retired in order to qualify for the Section 1114 protections is not addressed in Section 1114, since "retiree benefits" means payments to "any entity or person for the purpose of providing or reimbursing payments for *retired employees* and their spouses and dependants" (emphasis added), it follows that the employees must be retired before the proposal is made to the class representative.

Here, the Appellants do not argue and cannot argue that their 365 Motion satisfied the proposal or application requirements of Section 1114 at the time the motion was made. Moreover, the Appellees were retired at the time the Bankruptcy Court ordered the Appellants to comply with Section 1114 by submitting a proposal to the Appellees' class representative. Therefore, the fact that the Appellees were not retired at the time of a 365 Motion is irrelevant for determining whether the Bankruptcy Court properly required the Appellants to comply with Section 1114 before terminating the Appellees retirement benefits.

However, the fact that the Appellees were terminated the day after the Appellants filed the 365 Motion and that, by way of termination, the Appellees were "retired" the day after the 365 Motion was filed is relevant for determining the application of Section 1114. The Appellants' motion to eliminate the retirement benefits one day before forcing retirement of the Appellees appears to be an attempt to bypass Section 1114, and such an action is not consistent with the statute, which "was enacted to protect the interests of retirees of Chapter 11 debtors." *See 7 Collier on Bankruptcy,* ¶ 1114.02[1] (15th ed.2002). By way of termination, the Appellees were retirees at the time the Bankruptcy Court considered whether Section 1114 or Section 365 applied. Accordingly, the Bankruptcy Court correctly held that subjecting the Appellants to the procedural safeguards of Section 1114 was proper.

In addition to its appeal, the Appellants bring a motion to strike portions of the Appellees' answering brief and seek an order "striking (i) any and all factual representations that were included in the Answering Brief and not included in the Designated Record and (ii) any and all legal assertions or arguments made by the Appellees in the Answering Brief, to the extent such assertions or arguments rely on

facts not included in the designated record." Because the references challenged by the Appellants were not relevant in deciding their appeal, I have not relied on them in holding that the Appellants are required to comply with Section 1114 before modifying the Agreements.

## V. Conclusion

Accordingly, IT IS HEREBY ORDERED that the decision of the Bankruptcy Court which is the subject of Appellants' appeal (D.I. 1) is AFFIRMED and the Appellants' motion to strike (D.I. 10) is DENIED.